**EXHIBIT L**

**SHARPE SURVEYING & CONSULTING**
**SAMS AMS, USCG LCDR (Ret.)**
**242 Inverness Ct.**
**Alameda, CA 94502**
**(510) 337-0706   FAX (781) 623 8386**
**E-Mail rsharpe@sharpesurveying.com**

**REPORT OF DEFENDANT'S EXPERT**

November 21, 2014

1.  I was retained by defendant's counsel, Ralph J. O'Neill of MacDonald, Rudy, Byrns, O'Neill & Yamauchi, LLP, 1001 Bishop Street, Suite 2650, Honolulu, Hawaii 96813, in the matter of Richard Mount and Ellen Frosch vs. Keahole Point Fish, LLC., Blue Ocean Mariculture, LLC, Fish Facts, Inc., in personam, M/V KONA KAMPACHI I, M/V KONA KAMPACHI II, in rem; Civil No. 14-00100 ACK-RLP.  I was retained to review the facts and circumstances of the incident involving the alleged injury to the Plaintiff, Richard Mount, while working as a deckhand and diver aboard the fishing industry vessels KONA KAMPACHI I and KONA KAMPACHI II on or about November 16, 2011 and September 6, 2012 and to provide opinions regarding the incidents.

2.  Attached hereto as Exhibit "A" is a true and correct copy of my Curriculum Vitae. From 1975 to 1979, I was a Cadet at the United States Coast Guard Academy where I graduated with a BS degree majoring in Naval Architecture and Marine Engineering.  From 1979, through 1999, I served as an officer in the United States Coast Guard.  My first tour of duty was to serve as an engineering officer on board the Coast Guard Cutter Taney.  As part of that tour of duty I became qualified at the Officer of Deck in charge of the navigation of the vessel underway and as Engineering Officer of the Watch in charge of the engineering systems while underway.  From mid 1981, through May 1999, my service with the United States Coast Guard was almost entirely related to conducting inspections of commercial vessels and investigation of marine accidents pursuant to regulations set forth in the Code of Federal Regulations including but not limited to Titles 33 & 46 and various international conventions to which the United States is signatory.  My duties during this time frame involved the inspection of commercial vessels and accident investigations involving commercial vessels similar to the two vessels involved in this case.  These inspections and investigations involved review and enforcement of federal regulations in accordance with Coast Guard policy.

3.  My initial duty assignment as a marine inspector was from 1981 to 1984, stationed at the Marine Safety Office in Port Author Texas.  During my training by the Coast Guard to qualify as a Marine Inspector I attended the 12 week Coast Guard Marine Safety Basic Indoctrination Course at Yorktown Virginia.  This training included the proper use and application of International Treaties, Federal Laws and Federal Regulations in accordance with Coast Guard policy.  Subsequent to my training I became a qualified Marine Inspector.  As part of my continuing training as a marine inspector I attended various survey and inspection courses. As a marine inspector I conducted many inspections of commercial vessels including small passenger vessels, cargo vessels and passenger carrying cruise ships.  As part of my duties as a Marine Inspector I was tasked with application of regulations to commercial vessels in accordance with Coast Guard policy.  During my training to become a qualified Investigating Officer with the Coast Guard I attended the Coast Guard 4 week Investigating Officer Course at Yorktown Virginia.  As a marine investigator I conducted many investigations into casualties

BOM0075

aboard both inspected and uninspected commercial vessels similar to the vessels in this case. Part of my duties as an Investigating Officer was to review regulations that applied to the vessel and the operations it was conducting at the time of the casualty and apply them in accordance with Coast Guard policy. This included review of both Coast Guard and OSHA regulations when investigating casualties on board uninspected commercial vessels similar to the vessels involved in this incident. When violations of Coast Guard regulations were found to be causal factors civil penalty actions and suspension and revocation hearings were initiated. When violations of OSHA regulations were found to be causal factors OSHA was notified for enforcement action as that agency deemed appropriate. The Memorandum of Understanding (MOU) between the Coast Guard and OSHA was followed as appropriate for joint investigations.

4. During the period from 1984 to 1988, I was stationed at the Coast Guard Marine Safety Detachment in Key West, Florida, where I was the detachment supervisor and personally conducted the structural and safety equipment regulatory inspections of the fleet of small passenger vessels operating from Key West to Key Largo, Florida and the passenger vessels and cargo vessels calling at the port of Key West. I also conducted the accident investigations on commercial vessels in this area including accidents involving uninspected commercial vessels similar to the vessels involved in this incident.

5. During the period from 1988 to 1992, I was stationed at the Coast Guard Headquarters division responsible for drafting regulations and Coast Guard policy for commercial vessel inspections. During this tour of duty I drafted legislation, regulations and Coast Guard policy pertaining to inspected and uninspected commercial vessels.

6. During the time frame of 1992 to 1995, I was the Chief of Inspections and Senior Investigating Officer at the Coast Guard Marine Safety Office in San Juan, Puerto Rico. During my final Coast Guard tour from 1995 to 1999, I served as the assistant Chief of Inspections at the Marine Safety Office in San Francisco for one year and then as the Senior Investigating Officer for 3 years. During these two tours of duty I was responsible for the proper conduct of safety inspections and making the determinations of the causes of accidents which occurred on board both inspected and uninspected commercial vessels. Investigation of casualties on board uninspected vessels included review of noncompliance with both Coast Guard and OSHA regulations that may have been causal factors in the accident.

7. Since retiring from the Coast Guard in 1999, I have operated my own business as a marine surveyor, accident investigator and consultant. I have consulted on a variety of accidents and have carried out marine accident investigations on behalf of insurance companies and legal firms, looking into the cause of accidents and the regulatory issues applicable to these accidents. Review of and compliance with both Coast Guard and OSHA regulations and industry standards has been a part of my review for causal factors. I am an active independent marine surveyor accredited by the Society of Accredited Marine Surveyors (SAMS®) for Yachts and Small Craft. I work as a consultant to commercial vessel owners to address regulatory issues and act as liaison between vessel owners and the Coast Guard.

8. In addition to my professional training and experience I have been an avid boater all my life. I have operated various vessels from small row boats and sailing dinghies to larger yachts in the 50 foot size range. I currently own and operate a Cobalt 226 power boat.

BOM0076

9.  My fee schedule for services and a list of my deposition and trial testimony since retiring from the Coast Guard in 1999, are attached hereto as Exhibits "B" and "C" respectively.

10.  At the time of making this report I have reviewed the following documents:
    a.  Various laws pertaining to vessel inspection including but not limited to Title 46 U.S.C. Chapters 21 and 33.
    b.  Various regulations pertaining to commercial vessels including but not limited to 46 C.F.R Subchapters C, G and V.
    c.  OSHA regulations pertaining to commercial diving operations contained in 29 C.F.R. Subpart T.
    d.  Federal register vol. 76, No. 155/ Thursday August 11, 2011 NPRM titled Inspection of Towing Vessels.
    e.  National Marine Fisheries website www.st.nmfs.noaa.gov/pls/webpls/cgv_pkg.vessel_id_list for Coast Guard vessel documentation information for the vessels KONA KAMPACHI I & KONA KAMPACHI II.
    f.  Complaint by Plaintiffs.
    g.  First amended Complaint by Plaintiffs.
    h.  Answer to Plaintiffs first amended complaint.
    i.  Plaintiff Richard Mount's responses to Defendants' request for answers to interrogatories.
    j.  Keahole Point Fish LLC., Dive Manual Version 1.0 June 2010.
    k.  OSHA Handbook; A basic Guide to Compliance for Uninspected Vessels November 2010.
    l.  OSHA Instruction directive number CPL 02-01-047 dated 02/22/2010; OSHA Authority over Vessels and Facilities on or adjacent to U.S. Navigable Waters and the Outer Continental Shelf (OCS).
    m.  OSHA Instruction Directive Number: CPL 02-00-151 dated June 13, 2011; 29 CFR Part 1910, Subpart T – Commercial Diving Operations.
    n.  KONA KAMPACHI  C200708, Marine Survey dated March 5, 2006.
    o.  KONA KAMPACHI C200708, ON. 1183797 Marine Survey dated March 19, 2014.
    p.  ACU-1-930 C200930, Marine Survey dated February 22-25, 2007.
    q.  KONA KAMPACHI II C200930, ON. 1198834 Marine Survey dated March 19, 2014.
    r.  Coast Guard Certificate of Documentation KONA KAMPACHI. ON. 1183797.
    s.  Coast Guard Certificate of Documentation KONA KAMPACHI II ON. 1198834.
    t.  Summary of towing events for KONA KAMPACHI I AND II.
    u.  Interview with Lance Hubbert, General Manager of Blue Ocean Mariculture, on October 21, & 22, 2014 regarding operation of the KONA KAMPACHI I, II & III.
    v.  U.S. Navy Towing Manual.
    w.  Schematic diagram of LCM8.
    x.  Diagram of a towing vessel.
    y.  Photos of M/V Ho'oponopono
    z.  OSHA inspection and enforcement actions for Blue Ocean Mariculture LLC dated January 17 – May 3, 2013.

11.  At the time of making this report I have conducted a sight inspection on board the KONA KAMPACHI I and KONA KAMPACHI II  on October 22 and 23, 2014.

BOM0077

12.  At the time of making this report I have conducted a sight inspection of the KONA KAMPACHI III and the ongoing commercial fish farming operation offshore of Kona Hawaii on October 22, 2014.

13.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my opinion that the KONA KAMPACHI I and KONA KAMPACHI II were commercial fishing industry vessels at the time of the incidents in question. In reaching that conclusion I was specifically mindful of the following information:

    a.  Coast Guard certificates of documentation showing fishery service.

    b.  National Marine Fisheries website data showing the service of both vessels as commercial fishing vessels.

    c.  Marine surveys showing the service of the vessels as commercial fishing industry vessels.

    d.  Definitions in 46 U.S.C. 2101(11) for various types of fishing industry vessels.

    e.  Definitions in 46 C.F.R. Section 67.3 for Fisheries.

    f.  Definitions in 46 C.F.R. Section 28.50 for fishing industry vessels.

    g.  Observation of the fishing operations which the subject vessels were involved in at the time of the incident.

    h.  The plain language in the definitions of fishing and fishing industry vessels using the term "harvesting" is clearly the operation that mariculture fish farming falls under.

    i.  The plain language of the definition of a fish tender vessel clearly describes operations that the subject vessels engage in on a daily basis.

    j.  Specialty equipment observed on board KONA KAMPACHI II and KONA KAMPACHI III for operation as fishing industry vessels including but not limited to:

        Fishing / Fish tender vessel gear:

        Fish harvesting pump and associated hoses and gear to harvest fish from the pens.

        Bins with ice to hold fish after harvesting for transport to shore side facility.

        Scuba Gear for divers use to remove dead fish from pens and operate pen equipment for feeding, cleaning and harvesting.

        Fish feeding pumps and bins to hold fish food.

        Fish peroxide treatment pumps and equipment for maintaining health of fish in pens.

        Air compressor and associated hoses to lift fish pens to surface for various operations.

14.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my opinion that the KONA KAMPACHI I and KONA KAMPACHI II were not required to be inspected and certificated by the Coast Guard and were categorized as uninspected commercial vessels at the time of the incidents in question.  In reaching that conclusion I was specifically mindful of the following information:

    a.  Title 46 U.S.C. Section 3301 which defines vessels subject to inspection.

    b.  Title 46 U.S.C. Section 3302(b) which exempts fishing vessels and fish tender vessels from section 3301(1), (7), (11), and (12) from inspection.

    c.  Title 46 U.S.C. Section 3302(c)(2)(A) which exempts fish tender vessels of not more than 500 gross tons from section 3301(1), (7), and (12) from inspection.

15.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my opinion that the KONA KAMPACHI I and KONA KAMPACHI II were required to comply with the OSHA commercial diving regulations found in

BOM0078

29 C.F.R. Subpart T, at the time of the incidents in question.  In reaching that conclusion I was specifically mindful of the following information:

    a.   29 C.F.R. 1910.401 Scope and application.  (a) Scope (1) This subpart (standard) applies to every place of employment within the waters of the United States, or within any State . . . where diving and related support operations are performed.

    b.   OSHA Handbook "A Basic guide to Compliance for Uninspected vessels". Clearly defines the policy between OSHA and the Coast Guard regarding uninspected vessels and states that OSHA rules apply to all uninspected commercial vessels including commercial fishing vessels and uninspected towing vessels.

    c.   OSHA policy guidance states that OSHA regulations will continue to apply to uninspected commercial towing vessels until the final rules are promulgated for towing vessels.

    d.   Coast Guard / OSHA Memorandum of Understanding (MOU) between the U.S. Coast Guard and OSHA concerning the health and safety of seaman on inspected vessels clearly defines that OSHA regulations apply to uninspected commercial vessels.

    e.   OSHA handbook note on page xix and note on page 323 concerning application of OSHA regulations to uninspected towing vessels in light of the pending NPRM "when finalized these vessels will fall under USCG jurisdiction" until then OSHA continues to regulate towing vessels.

    f.   Appendix III of the OSHA handbook states under Authority that vessels must be subject to inspection AND required to have a Certificate of Inspection.

    g.   OSHA handbook page 322 states that since the Coast Guard has not exercised its authority on towing vessels they therefore remain uninspected and under OSHA jurisdiction.

    h.   OSHA inspection and enforcement actions for Blue Ocean Mariculture LLC dated January 17 – May 3, 2013.

16.   Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my opinion that KONA KAMPACHI I and KONA KAMPACHI II were not subject to the Coast Guard commercial diving regulations found in 46 C.F.R. Part 197 at the time of the incidents in question.  In reaching that conclusion I was specifically mindful of the following information:

    a.   The subject vessels, which were commercial fishing industry vessels, were not subject to inspection and not required to have a certificate of inspection by the Coast Guard.

    b.   46. C.F.R. Part 197.202 Applicability.  (a) This subpart applies to commercial diving operations taking place at any deep water port or the safety zone thereof as defined in 33 CFR part 150; from any artificial island, installation, or other device on the Outer Continental Shelf and the waters adjacent thereto as defined in 33 CFR part 147 or otherwise related to activities on the Outer Continental Shelf; *and from all vessels required to have a certificate of inspection issued by the Coast Guard* including mobile offshore drilling units regardless of their geographic location, or from any vessel connected with a deep water port or within the deep water port safety zone, or from any vessel engaged in activities related to the Outer Continental Shelf; . . . (emphasis added)

    c.   The plain language of the regulation as highlighted above is clear that the vessel must be required to have a certificate of inspection issued by the Coast Guard in order for the Coast Guard 46 C.F.R. Part 197 commercial diving regulations to be applicable.

BOM0079

17.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my opinion that the KONA KAMPACHI I and KONA KAMPACHI II were not required to have a certificate of inspection by the Coast Guard as towing vessels at the time of the incidents in question.  In reaching that conclusion I was specifically mindful of the following information:

a.  46 U.S.C. 2101(11), (11a), (11b) & (11c) for the definition of fish and fishing industry vessels.

b.  46 U.S.C. 2101(40) ''towing vessel'' means a commercial vessel engaged in or intending to engage in the service of pulling, pushing, or hauling along side, or any combination of pulling, pushing, or hauling along side.

c.  The Coast Guard NPRM for the inspection of towing vessels dated August 11, 2011 has not been promulgated as a final rule that would require towing vessels to be inspected and certificated by the Coast Guard.

d.  The Coast Guard proposed rules that would require certain towing vessels to have a certificate of inspection do not apply to "towing vessels less than 26 feet in length, unless towing a barge carrying oil or other dangerous or combustible cargo in bulk; workboats that do not engage in commercial towing for hire, but may intermittently move a piece of equipment within a work site such as a dredging or construction site; and towing vessels performing assistance towing as currently defined in 46 CFR 10.107.

e.  Even if the subject vessels were somehow improperly designated as towing vessels, the above statement concerning workboats that may intermittently move a piece of equipment would exempt the subject vessels from inspected status under the NPRM.

f.  If the current NPRM for inspection of towing vessels had completed the regulatory process and was in force it would not apply to the vessels that are the subject of this incident.

g.  Occasional Good Samaritan towing of vessels in distress does not reclassify a commercial fishing industry vessel as a towing vessel.

18.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my opinion that the KONA KAMPACHI I and KONA KAMPACHI II would not be redefined as towing vessels due to the intermittent towing of fishing pens and fish farming gear.  In reaching that conclusion I was specifically mindful of the following information:

a.  Fishing vessels that tow various fishing gear such as trawls, purse seines and long lines are not defined as towing vessels.

b.  The towing of fish pens is equivalent to the towing of purse seine nets and as such the towing of this fishing gear does not make a fishing vessel into a towing vessel.

19.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my opinion that the KONA KAMPACHI I and KONA KAMPACHI II are not towing vessels and would require significant modifications in order to be suitable for service as towing vessels.  In reaching that conclusion I was specifically mindful of the following information:

a.  These vessels have no towing winch or towing machinery installed.

b.  These vessels have no towing bollard installed.

c.  The mooring bits installed on these vessels are not adequate for use as towing bits for commercial towing operations.

BOM0080

d.   There are boarding ladders installed on the stern of these vessels which would require removal in order to prevent entanglement in towing gear.

e.   The general arrangement of these vessels with the pilot houses located aft of a large well deck prevent the proper attachment of towing gear to the vessels, forward of the propulsion and steering systems, to allow for adequate control of a towed vessel.

f.   The enclosed diagrams of an exemplar LCM8 and towing vessels show the proper necessary location of towing gear on a towing vessel and the arrangement that prevents this installation on the subject vessels.

g.   The enclosed photos a the general purpose commercial towing and salvage vessel M/V Ho'oponopono with general arrangements that accommodate towing.

20.   This report is a preliminary report based on my review of the information noted above.  My opinions are stated with a reasonable degree of professional certainty as an experienced Coast Guard Marine Inspector and accident investigator, as an active accredited marine surveyor and as an experienced boater.  When I am provided with further documentation for my review of the specific facts surrounding the causal factors for the alleged injuries, I may have additional opinions in this case.

21.   My opinions are supported by the facts of this case and my experience and training as a Coast Guard accident investigator.  I am prepared to testify to these opinions in deposition or at trial if called upon to do so.  In accordance with 28 U.S.C. § 1746(2), I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Randell B. Sharpe
SAMS® AMS

Exhibits:  (A) CV
           (B) Rate Sheet
           (C) Work History
           (D) Vessel Diagrams of towing vessels and LCM8
           (E) Diagram of towing vessel v. LCM8
           (F) Photos of M/V Ho'oponopono; multipurpose towing and salvage vessel.

BOM0081

# CURRICULUM VITAE

## *Personal Information*

Randell Battelle Sharpe
SSN 261 17 6063

Address:   242 Inverness Ct.
            Alameda, CA  94502
            Phone      (510) 337-0706
            Fax        (781) 623-8386
            E-mail:    rsharpe@sharpesurveying.com
            Website:   www.sharpesurveying.com

## *Current occupation:*

July 1999 to Present: Doing business as Sharpe Surveying & Consulting. SAMS Accredited Marine Surveyor.  Conducting condition & value prepurchase and insurance surveys on yachts and small craft as an independent marine surveyor.  Accident Investigator: Conducting damage surveys on vessels for insurance claims.  Marine Industry Consultant:  Consulting with the commercial vessel industry in the capacity of marine surveyor and liaison between the commercial marine industry and regulatory agencies such as the U.S. Coast Guard.  Liaison and technical consultant for M.H. System's alternative to double hull tank vessel design concept using the AUPS hydrostatic balancing system.  Surveyor for conversion of 133 ft. car ferry to pleasure vessel and office complex.  Consulting with the owners of the sailing vessel CAT BALLOU, BAY WOLF, OSPREY & SON OF A SAILOR for initial Coast Guard Certification as small passenger vessels.  Liaison for the builder of the Wyliecat 65, DEREK M BAYLIS, obtaining initial Coast Guard certification as a small passenger vessel.  Consulting as an expert with admiralty attorneys regarding civil and criminal actions related to the marine industry. Testified in multiple liability cases in deposition and at trial.

## *Military Service:*

U.S. COAST GUARD Commissioned Officer; 23 May 1979 to 31 May 1999.
Lieutenant Commander, Retired.

**1.**   Chief Casualty Investigations Department
      Marine Safety Office San Francisco Bay
      June 1996 to May 1999

Conducted investigations into the cause of marine accidents for the U.S. Coast Guard.  Area of responsibility included the Northern California coast from the northern boarder south to Monterey.  This area included the San Francisco Bay and its tributaries as well as Lake Tahoe. Conducted administrative hearings for action against merchant mariner credentials before an Administrative Law Judge.  Completed administrative civil penalty reports for violations of federal law.  This included preparing comprehensive evidence packages to prove the elements of each violation.

BOM0082

**2**. Assistant Chief Inspections Department
Marine Safety Office San Francisco Bay
July 1995 to June 1996

Conducted the inspection of commercial vessels under Title 46 U.S.C. Chapter 33 for the U.S. Coast Guard.  This included both small passenger carrying vessels and deep draft freight and tank vessels.  Point of contact for both the industry and field inspectors on technical questions regarding the Federal Regulations applicable to different types of commercial vessels.  Carried out historical review of complex inspection cases, which had been problem areas, clearing up long standing inspection discrepancies.

**3**. Chief Inspections / Investigations Department
Marine Safety Office San Juan, Puerto Rico
July 1992 to July 1995

Conducted the inspection of U.S. and Foreign commercial vessels under Title 46 U.S.C. Chapter 33 and International Treaties for the U.S. Coast Guard.  This included small passenger carrying vessels, large cruise ships, deep draft freight vessels and tank vessels.  This port was the second largest Cruise ship port in the United States and carried out the largest number of foreign vessel exams in the Seventh Coast Guard District.  Point of contact for both the industry and field inspectors on technical questions regarding the federal regulations applicable to different types of commercial vessels.  Conducted investigations into the cause of marine accidents for the U.S. Coast Guard.  Area of responsibility included Puerto Rico and the U.S. Virgin Islands.  Conducted administrative hearings for action against merchant mariner credentials before an Administrative Law Judge.  Completed administrative civil penalty reports for violations of Federal Law.  This included preparing a comprehensive evidence package to prove the elements of each violation.  Conducted several major accident investigations including the major pollution incident in Puerto Rico from the barge MORRIS J. BERMAN.  Made safety recommendations that were adopted into regulation.

**4**. Staff Member Compliance and Enforcement Division.
Coast Guard Headquarters Washington, D.C.
May 1988 to July 1992

Researched and responded to appeals of the regulations regarding small passenger vessels and other commercial vessel regulations and international treaties.  Drafted legislative proposal to simplify the definitions of passenger and the three types of passenger carrying vessel in the U.S. Code.  This was passed into law as the passenger vessel safety act of 1992.  Assisted in the review and rewrite of the code of federal regulations for small passenger vessels.  Drafted comprehensive guidelines to implement the 1987 revised drydock regulations.  Assisted in the initial examination of new cruise ships prior to and during their first visit to a U.S. port.

**5**. Supervisor Marine Safety Detachment
Key West, Florida
June 1984 to May 1988

This was an independent field command.  Conducted annual safety inspections and biennial drydock inspections for a fleet of 100 small passenger vessels.  Conducted accident investigations into the cause of casualties for commercial vessels in the Florida Keys.

BOM0083

Represented the Coast Guard as prosecutor for administrative hearings regarding merchant mariner credentials.  Brought to the industry an understanding of the rationale for the regulations for small passenger vessels.  Instilled a cooperative atmosphere gaining compliance with the regulations.

6.  Inspector / Investigator trainee
    Port Arthur, Texas
    July 1981 to June 1984

Training job where skills and knowledge of conducting inspections and investigations were learned and then put into practice.  Participated in comprehensive training program learning all aspects of the U.S. Coast Guard marine inspection and investigation process.  Participated in the inspection of barges, new construction of offshore oil rigs, small passenger vessels, offshore supply vessels, and engineering and deck inspections of deep draft U.S. vessels and foreign vessel examinations for compliance with U.S. Laws and International Treaties.  Acted as the unit's Licensing Officer for merchant mariner credentials.  Assigned as an Investigating Officer to investigate marine accidents and conduct administrative hearings for the Coast Guard.  All required qualifications were obtained and practiced for a solid foundation for a career in marine safety.

7.  Student Engineering Officer
    USCGC TANEY
    June 1979 to July 1981

Training and management engineering job aboard a steam powered long range Coast Guard Cutter.  While learning the operation of a non-automated steam plant through hands on operation and maintenance of the systems, managed several shipboard departments responsible for carrying out the maintenance of the auxiliary machinery and electrical systems on board.  As engineering department Training Officer ensured proper training was conducted enabling the crew to respond to any emergency.  Prepared for and carried out refresher training exercises in Guantanamo Bay, Cuba receiving marks of excellent in all categories.  Satisfactorily completed the student engineering program becoming a qualified Engineering Officer of the watch.

### *Education*

| Completion | Course Title | Brief Description |
|---|---|---|
| 01-Jul-77 | Damage Control school | Introduction to shipboard control of damage and flooding |
| 15-Jul-77 | Shipboard fire fighting school | Basic techniques in shipboard fire fighting |
| **23-May-79** | **US Coast Guard Academy** | **Bachelor of Science; Major in Naval Architecture/Marine Engineering** |
| 14-Aug-79 | Navigation Rules of the Road | Rules of the Road training for Deck Watch Officers |
| 17-Dec-79 | In Port Engineering Officer | Designation after completing training on in-port emergency procedures |
| 08-Feb-80 | Shipboard Engineering Part A | Practical training in the systems aboard a 327 foot steam powered ship |
| 18-Apr-80 | Damage Control Assistant Course | Principles of ship board fire fighting, flooding, stability & damage control |
| 10-Jun-80 | Engineering Officer of the Watch | Designation as Qualified Engineering Officer aboard the USCGC Taney |
| 27-Jun-80 | Shipboard Engineering Part B | Practical training course in all aspects of steam ship engineering |
| 28-Nov-80 | Deck Watch Officer | Designation as Qualified Deck watch Officer aboard the USCGC Taney |
| 18-May-81 | DWO Rules of the Road Test | Knowledge test in the Navigational Rules of the Road |
| **24-Mar-82** | **Marine Safety Basic Indoctrination** | **12 Week course in regulatory procedures for vessel inspections** |

| 30-Apr-82 | Commercial Diving Operations | Introductory overview of commercial diving operations |
|---|---|---|
| 19-Aug-82 | Offshore Survival Technology | Practical use of lifesaving appliances and water survival |
| 12-May-83 | Tank Fire Prevention & Control | Texas Safety Association Course in Tank Fire Prevention & Firefighting |
| 27-May-83 | Hazardous Chemicals Training | Regulatory requirements for shipment of hazardous materials |
| 15-Oct-83 | Designation as Investigating Officer | Letter of designation to carry out the duties of an investigating officer |
| **27-Jan-84** | **Marine Safety Investigating Officer Course** | **Practices for conducting casualty investigations administrative hearings** |
| **11-Oct-85** | **Surveying Fiberglass vessels** | **Methods and practical application for survey of fiberglass vessels** |
| **26-Sep-86** | **Inspection of Wooden Boats** | **Methods and practical application for survey of wooden vessels** |
| 24-Oct-86 | T-Boat Plan review Course | Review of ABS rules & Federal Regulations for small passenger vessels |
| 15-May-92 | Chief Inspections Department | Coast Guard policy and procedures for Inspections Department |
| 04-Mar-97 | DNV ISM Code | Covered purpose and implementation process for ISM Code |
| 06-Mar-97 | DNV Internal Auditor Course | ISM Safety and Quality Management Course |
| **26-Oct-01** | **ABYC Certification Course** | **Marine Electrical Technician:  Certified** |
| **15-Nov-01** | **SAMS annual conference** | **Three day educational symposium for marine surveyors** |
| **7-Apr-02** | **ABYC Standards** | **Accreditation course for ABYC standards:  Accredited** |
| **24-Sep-02** | **NAMS annual conference** | **Two day educational symposium for marine surveyors** |
| **10-Apr-03** | **SAMS Pacific Region Conference** | **Two day educational symposium for marine surveyors** |
| **13-Sept-03** | **SAMS Educational Seminar** | **Presented talk on USCG NVICS and published policy** |
| **15-Oct-03** | **SAMS Annual Conference** | **Two and a half day educational symposium for surveyors** |
| **12-Jun-04** | **SAMS N Cal sub regional mtg.** | **Two hour educational meeting Insurance and USCG Auxiliary** |
| **27-Oct-04** | **SAMS Annual Conference** | **Two and a half day educational symposium for marine surveyors** |
| **7,8 Apr 05** | **SAMS Pacific Region Conference** | **Two day educational symposium for marine surveyors** |
| **26-28 Oct 05** | **SAMS Annual Conference** | **Two and a half day education symposium for marine surveyors** |
| **14-Jan-06** | **SAMS N Cal sub Regional Mtg.** | **Four hour educational meeting on Aluminum construction** |
| **11-Aug-07** | **SAMS N Cal sub Regional Mtg.** | **Four hour educational meeting on wood boat restoration** |
| **24-27 Oct 07** | **SAMS Annual Conference** | **Three day educational symposium for marine surveyors** |
| **10,11 Apr 08** | **SAMS Pacific Region Conference** | **Two day educational symposium for marine surveyors** |
| **24-28 Sept08** | **SAMS Annual Conference** | **Two and a half day educational symposium for surveyors** |
| **16-19 Sep 09** | **SAMS Annual Conference** | **Two and a half day educational symposium for surveyors** |
| **Apr 2010** | **SAMS Pacific Region Conference** | **Three day educational symposium for marine surveyors** |
| **Oct 2011** | **SAMS Annual Conference** | **Two and a half day educational symposium for surveyors** |
| **Oct 2012** | **SAMS Annual Conference** | **Two and a half day educational symposium for surveyors** |
| **Feb 2013** | **SAMS Pacific Region Conference** | **Two day educational symposium for marine surveyors** |

## *Military Awards*

| Award date | Award | Accomplishment |
|---|---|---|
| 24-Jun-92 | Commendation Medal | Developing legislation for Passenger Vessel Safety Act 93 |
| 17-May-95 | Commendation Medal | Reforming dept eliminating backlogs standardizing processes |
| 19-May-99 | Commendation Medal | Promotion of Safety Initiatives effecting national CG policy |
| 23-Nov-83 | Achievement Medal w/O device | Coordinating & implementing major military exercise |
| 18-Jul-84 | Comdt Ltr of Commendation w/O device | On Scene Fire fighting Assistance Tank Ship Mara Hope |
| 10-Jan-95 | Comdt Ltr of Commendation | Investigation of Morris J. Berman major oil spill |
| 15-Jun-92 | DOT outstanding Unit award | Issued to Members of MSO San Juan PR |
| 07-Oct-94 | Unit Commendation w/O device | Response to major oil spill from the barge Morris J. Berman |
| 30-Nov-94 | Meritorious Team Commendation | Bring substandard freight vsls into compliance safety standards |
| 09-May-95 | Meritorious Team Commendation | Multi agency effort to prosecute illegal toxic waste dumping |

| 15-Sep-76 | Meritorious Unit Commendation w/O | American Bicentennial Cruise on board USCGC Eagle |
| 25-Oct-95 | Meritorious Unit Commendation w/O | Major oil spill in PR & Grounding of T/S Mantinia & 2 ship fires |
| 17-Apr-97 | Meritorious Unit Commendation w/O | MSO San Francisco operations |
| 01-Jun-79 | Refresher Training E ribbon | USCGC TANEY refresher training receiving all Es |
| 02-Jan-90 | Bicentennial  award | Service in Coast Guard during the 200th anniversary |
|  | National Defense Ribbon | Service in the Coast Guard during the Gulf War |
| 16-Dec-80 | Humanitarian Service Medal | Cuban Refugee Relief Operations aboard the USCGC Taney |
| 01-Jan-94 | Humanitarian Service Medal | CG operations in 7th district saving refugees in Caribbean |
| 07-Oct-94 | Special operations service ribbon | Response to major oil spill from the barge Morris J. Berman |
| 01-Jul-81 | Sea Service Ribbon | Service aboard the USCGC TANEY |
| 07-Sep-01 | Marine Safety & Environmental Protection Professional | Demonstrated proficiency in multiple inspection & Investigation disciplines while serving in the Coast Guard. |

## Special skills

Sailing / Boat Handling experience:
Spent summers on the Long Island Sound as a child.  Learned to sail at the age of 4 with father on sailing dinghies.  Operated the family row boat as a child and then the family 19 foot motor boat as a teenager.  Completed the Coast Guard Auxiliary boating safety course about 1970. While at the Coast Guard Academy crewed as a cadet on the Coast Guard tall ship Eagle during the 10 week summer cruise Operation Sail 1976.  This cruise included training in all areas of Marlin Spike seamanship.  Avid recreational sailor with experience on several types of sailboats from sunfish to offshore yachts.  Avid boater currently own and operate a 2003 Cobalt 22 foot motor boat and a Laser sailing dinghy.

## Other Information

Memberships in Organizations:

- SAMS (Society of Accredited Marine Surveyors) Accredited Marine Surveyor
- ABYC (American Boat & Yacht Council)
- NFPA (National Fire Protection Association)
- SNAME (Society of Navel Architects and Marine Engineers,
- IAMI (International Association of Marine Investigators)
- Boat U.S. (National organization lobbying for safe boating)
- U.S. Sailing (National organization promoting organized sailing)
- USCG Alumni Association



# MARINE SURVEYS

### *SHARPE*
### *SURVEYING & CONSULTING*

January 1, 2013

# Rate Sheet

Expert consulting including case review/preparation      $150.00 per hour

Expert Testimony at deposition or in court      $200.00 per hour

Marine surveys; Basic rate      $15.00 per foot
$300.00 Minimum

Travel & per diem expenses when traveling
in excess of 25 miles from my office.

$0.50 per mile or
Air fare reimbursement when applicable
Auto rental or local taxi when applicable
$55.00 per day / meals
Reimbursement for lodging costs
Minimum hourly charge of 8 hours per day when traveling over 100 miles one way.

I require a non-refundable retainer of $1,000.00 to commence work on a case. Hours will be billed monthly for payment of work completed. Invoices are due upon receipt. A 10% late fee will be charged past 45 days from original invoice date and a 1.5% monthly interest fee will be charged for invoices that are outstanding after 60 days.

Sincerely

Randell B. Sharpe

Rates are subject to change without notice.
Rates for marine surveys may vary based on type of vessel and survey type.

242 Inverness Ct.
Alameda, CA 94502-6421
(510) 337-0706
rsharpe@sharpesurveying.com

BOM0087

# Work History

November 22, 2014

Cases in which I, Randell Battelle Sharpe, have testified as an expert (at trial or by deposition) within the preceding 14 years.

January 5, 2000:  Mervyn B. Stayton, Plaintiff, vs.  Great Lakes Dredge & Dock Company, Sauce Bros. Ocean Towing Co., Inc., et. al.; Defendants.  Deposed, working as an expert on behalf of Cox, Wootton, Griffin & Hansen, LLP, representing Sauce Bros. Ocean Towing Co. Inc., defendants. Case No. NC022864 Superior Court of California County of Los Angeles, Southern District.

February 11, 2000:  Jamey H. Sherfy, Plaintiff, vs. Barge Marine Horizon, No 651632, in rem; Tug Marin Twilight, No. 614861, in rem; Sea-Land Service, Inc. in personam and Gary Winston individually and in personam, Defendants.  Deposed working as an expert on behalf of Brodsky, Baskin and Miller Inc. representing the plaintiff. Case No. C-98-4582 MJJ (ARB).

April 10, 2000:  Lonnie Reed, Plaintiff vs. National Liberty Ship Memorial Incorporated, et al., Defendants.  Deposed working as an expert on behalf of Lonnie Reed, plaintiff.  Superior Court Case Number 303991.

April 12, 2000:  People vs. Donald G. Ortiz.  Testified at trial as an expert on behalf of the defendant.  Napa, California Court.

October 27, 2000:  Clifford vs. National Liberty Ship Memorial SS JEREMIAH O'BRIEN. Deposed working as an expert on behalf of Sterling & Clack representing the defendant.  San Francisco Superior Court Case No. 301570.

March 8, 2001:  IMU/CU and Hughes vs. A. Aarins' Furnace.  Deposed working as an expert for Cox, Wootton, Griffin & Hansen, LLP representing IMU/CU and Hughes, plaintiff.  Court Case no. SC 056690 in Los Angeles, CA.

August 30, 2001:  Diana J. Kaul vs. Cash Investment Group, Inc. et. al.  Deposed working as an expert for Richard Diestel of Bledsoe, Cathcart, Diestel & Pedersen, LLP on behalf of Raymond M. Barnds, defendant.  U.S. District Court Northern District of California, San Francisco Division No. C00-0665-MJJ.

February 27, 2002:  Larry Edgell vs. American Ship Management.  Deposed working as an expert for Terence Cox of Cox, Wootton, Griffin, Hansen & Poulos, LLP on behalf of ASM, defendant.  Superior Court of the State of California, in and for the County of San Francisco. No. C00-02549 SI ARB.

March 7, 2002:  Larry Edgell vs. American Ship Management.  Testified at trial working as an expert for Terence Cox of Cox, Wootton, Griffin, Hansen & Poulos, LLP on behalf of ASM, defendant.  Superior Court of the State of California, in and for the County of San Francisco. No. C00-02549 SI ARB.

June 21, 2002:  Thomas Fitzgibbons vs. The Fish Hookers, Diana Canevaro; Barry Canevaro; Sport Craft.  Deposed working as an expert for Charles O. Geerhart of Paoli & Geerhart, LLP. on behalf of Mr. Fitzgibbons, plaintiff.  Superior Court of California, County of Alameda Case No. 840478-5.

February 26, 2003:  Michael Doyle vs. S/R Maritime Inc.  Deposed working as an expert for Rex Clack of Sterling & Clack on behalf of S/R Maritime Inc. defendant.  Case Number 323930.

April 7, 2003:  O'Brien vs. Krantz, et al.  Deposed working as an expert for Sharon Hightower of Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc. on behalf of  Brian J. Krantz, defendant.  Superior Court of California, County of Monterey, Case Number M 54516.

April 8, 2003:  Samonte vs. San Francisco Bay Concessionaires, et. al.  Deposed working as an expert for Eugene Brodsky of Brodsky, Baskin & Miller, Inc. on behalf of Genevieve Samonte, plaintiff.  U.S. District Court, Eastern District of California, Case Number CIV. S-02-777 EJG/PAN.

July 8, 2003:  Orson Larsen vs. Matson navigation Co.  Testified in court for Robert J. Finan on behalf of the defendant Matson Navigation Co. Superior Court of California,  City and county of San Francisco, Case No. CGC-02-406425.

October 6, 2003:  Schulz vs. Volvo Penta of the Americas, Inc. Deposed working as an expert for Sean P. Conboy of Carroll, Burdick & McDonough LLP on behalf of Volvo Penta, defendant.  Superior Court of California, City of San Jose Case No. CV798970.

October 22, 2003:  Schulz vs. Volvo Penta of the Americas, Inc.  Testified as an expert for Sean P. Conboy of Carroll, Burdick & McDonough LLP on behalf of Volvo Penta, defendant.  Superior Court of California, City of San Jose Case No. CV798970.

November 3, 2003:  Jan L. Green vs. Compass Rose Yacht Charters.  Deposed working as an expert for Eugene A. Brodsky of Brodsky, Baskin & Miller, Inc. on behalf of Jan Green, plaintiff.  Superior Court of the State of California, County of San Francisco, Case No. CGC-02-414716.

November 4, 2003:  Zygaj vs. San Francisco Bar Pilots.  Testified as an expert for Jeffrey R. Walsh Esq. on behalf of Mr. Zygaj, plaintiff.  Testimony given before Arbitrator John Kagel.

January 22, 2004:  Pomeroy Corporation Plaintiff for Exoneration From or Limitation of Liability.  Deposed working as an expert for Richard Wootton of Cox, Wootton, Griffin, Hansen & Poulos, LLP on behalf of Pomeroy Corporation.  United States District Court, Northern District of California, San Francisco Division; Case No. C02-5575 TEH.

February 19, 2004:  Pomeroy Corporation Plaintiff for Exoneration From or Limitation of Liability.  Testified in court working as an expert for Richard Wootton of Cox, Wootton, Griffin, Hansen & Poulos, LLP on behalf of Pomeroy Corporation.  United States District Court, Northern District of California, San Francisco Division; Case No. C02-5575 TEH.

April 5, 2004:  Robert Wickersham vs. Manson Construction Co. et al.  Deposed working as an expert for Richard Wootton of Cox, Wootton, Griffin, Hansen & Poulos, LLP on behalf of Manson Construction Co.  United States District Court Central District of California; Case No. SACV 02-1006 GLT.

May 25, 2004:  Robert Wickersham vs. Manson Construction Co. et al.  Testified working as an expert for Richard Wootton of Cox, Wootton, Griffin, Hansen & Poulos, LLP on behalf of Manson Construction Co.  United States District Court Central District of California; Case No. SACV 02-1006 GLT.

November 30, 2004:  Cristin Luttazi vs. Jeannie Somsen, Roger P. Soell et al.  Deposed working as an expert for Thomas J. Brandi of The Brandi Law Firm on behalf of the plaintiff, Cristin Luttazi.  Superior Court of the State of California in the county of Contra Costa, Case No. C0301940.

January 6, 2005:  James Swieton vs. Michael Apke.  Deposed working as an expert for Jon Yambert of Chilton, Yambert, Porter & Young, LLP, on behalf of the defendant, Michael Apke. Cook County No. 02 L 004693.

April 11, 2006:  Mark Hamerdinger DBA Black Mariah Diving / Towing vs. Pennisi Brothers, Inc. and F/V Irene's Way.  Testified in court as an expert for Ron Losch of Losch & Ehrlich Attorneys at Law, on behalf of the plaintiff Mark Hamerdinger.  U.S. District Court of Northern District of California No C 04-05490 CRB ARB.

February 21, 2007: Jesus Pilare vs. Matson Navigation Co. Testified in court as an expert in a hearing before the judge regarding interpretation of regulations for a court ruling on applicability of certain Coast Guard regulations. Testified on behalf of Matson for Robert J. Finan., attorney representing Matson Navigation. United States District Court, Northern District of California, Case No C 06-00023 WA.

March 16, 2007: Jeffery L. Luque vs. United States, N.D. Calif., Case No. 05-2471 JSW. Deposed as an expert on behalf of plaintiff working for Kurt Micklow of Banning, Micklow & Bull LLP.

June 25, 2007: Almanza vs. Sea River Maritime, Inc., SFSC Case No.: CGC-05-445773. Testified in court as an expert on behalf of defendant Sea River Maritime for Rex Clack of Sterling and Clack Attorneys at Law.

November 5, 2007:  Johnson v. Carnival, Case No. 07-21047-Civ-Ungaro-Benages/O'sullivan. Testified in deposition as an expert on behalf of defendant Carnival for Leah H. Martinez of Mase & Lara Attorneys at Law, 80 SW Eighth Street, Suite 2700, Miami, Florida.

December 6, 2007:  Bacon v. Westar Marine Services, SFSC Case No.: CGC-06-450013. Testified in deposition as an expert on behalf of defendant Westar Marine Services for David E. Russo of Sterling & Clack, Attorneys at Law, 101 Howard St., Suite 400, San Francisco, CA.

February 26, 2008 & March 13, 2008:  Beth Diaz vs. Robert P. Allen Defendant in the Circuit Court Nineteenth Judicial Circuit Lake County, Illinois No. 06 L 501.  Testified in deposition

BOM0090

and then at trial as an expert on behalf of Defendant for Jon Yambert of Chilton Yambert Porter & Young, LLP, 150 South Wacker Drive, Suite 2400, Chicago, IL 60606.

December 16, 2008 & January 30, 2009: Margaret McDonald vs. Blue and Gold Fleet et. al. Superior Court of the State of California City & County of San Francisco; Case No.: CGC 07 466927.  Testified in deposition and at trial as an expert on behalf of defendant Blue and Gold Fleet for James J. Tamulski of Emard, Danoff, Port, Tamulski & Paetzold, LLP. 49 Stevenson Street, Suite 400, San Francisco, CA 94105.

February 12, April 30, May 7, 2009:  Alan Carpenter & Tracy Ragsdale vs. Tug Michael Uhl and Maritime Logistics, et al. United States District Court Southern District of California Case No. 07 CV 0166.  Testified in deposition and at trial on behalf of plaintiff Alan Carpenter for Robert Wolfe of Engstrom, Lipscomb & Lack, 10100 Santa Monica Blvd, 16th Floor, Los Angeles, CA 90067.

September 15, 2009:  Constance Picchi et. al. vs. Westar Marine Services, Superior Court of California Case No. CGC-06-459149.  Testified in deposition on behalf of defendant Westar Marine Services for attorney Richard Wootton of Cox, Wootton, Griffin, Hansen & Poulos, LLP, 190 The Embarcadero, San Francisco, CA 94105.

March 11, 2010:  James Chizmar Jr. vs. Malpaso Productions et.al. Case No. VC 050180.  Testified in deposition on behalf of defendant Malpaso productions for attorney Terrance Cox of Cox, Wootton, Griffin, Hansen & Poulos LLP. 190 the Embarcadero, San Francisco, CA 94105.

May 25, 2010:  Leon Manderson vs. Chet Morrison Contractors Inc. United States District Court Western District of Louisiana, Lafayette Division case 6:08-CV-881.  Testified at trial on behalf of defendant Chet Morrison Contractors working for attorney Lawrence R. Plunkett, Jr., Reich, Album & Plunkett, LLC, Two Lakeway Center, Suite 1000, 3850 N. Causeway Blvd, Metairie, LA 70002.

September, 26, 2012: Aramark Sports and Entertainment Services, case 2:09-cv-00637-TC.  Testified at deposition on behalf of defendant Aramark working for attorney Terence S. Cox of Cox, Wootton, Griffin, Hansen & Poulos, LLP, 190 The Embarcadero, San Francisco, CA 94105.

March 10, 2014: Aramark Sports and Entertainment Services, case 2:09-cv-00637-TC.  Testified at trial Salt Lake City, UT, on behalf of defendant Aramark working for attorney Terence S. Cox of Cox, Wootton, Griffin, Hansen & Poulos, LLP, 190 The Embarcadero, San Francisco, CA 94105.

April 15, 2014:  People vs. Phillip G. Larson.  Testified at trial in Redwood City, CA on behalf of defendant Phillip Larson working for attorney George Eshoo, 702 Marshall St., Redwood City, CA 94063.

July 9, 2014:  Mary Ghai & Keit Troung vs. Phillip G. Larson; Case No. CIV 507737 & CIV 510493.  Testified at deposition on behalf of defendant Phillip Larson working for attorney Mitchell S. Griffin, of Cox, Wootton, Lerner, Griffin, Hansen & Poulos, LLP, 190 The Embarcadero, San Francisco, CA 94105.

SL740-AA-MAN-010



FIGURE 4-8. Effect of Towpoint on Steering.

BOM0092



**FIGURE M-2.  Anchor-Handling/Supply Tug.**



**FIGURE M-3.  Point-to-Point Towing Tug.**

BOM0093

BOM0094

**_TOWING VESSEL_**



Towing machinery forward of rudder

Pilot house

Rudder

**_KAMPACHI VESSEL_**



"Towing" has to be from behind rudder

Pilot house

No towing machinery on well deck forward of the rudder

Rudder

BOM0095

